Alexander W. Kramer, J.
This controversy arises from the application of the petitioners, Harold and Constance Felder (“ the Felders ”) for an order, pursuant to section 150 of the Debtor and Creditor Law, directing that a discharge of record be marked upon the docket of the judgment.
On November 1,1967, First National Bank of Bay Shore (“ the Bank”) recovered judgment against the Felders in this court in the amount of $3,134.57. The judgment was entered on November 13, and docketed in the County Clerk’s office in Suffolk on November 20 and in Nassau on November 28. The judgment then became a lien on certain premises owned by the Felders and located in Nassau County. The continuing existence of that lien and the nature thereof are the subject matter of this proceeding.
On February 28,1968, the Felders both were adjudicated bankrupts in the Dnited States District Court for the Eastern District *813 of New York. The Bank, the judgment lienor at that time, participated in the bankruptcy proceedings as a creditor. The Felders both were discharged in bankruptcy on August 7, 1968. The details of the bankruptcy proceeding that are relevant to the instant matter will be discussed later on where applicable.
On October 27, 1969, the Bank assigned its judgment to Mrs. Sheila Blackman, who appears in opposition to this application, for the sum of $310. When she sought to execute on the judgment, the Felders moved by order to show cause for the order sought herein. Such an order was signed on July 15, 1970, and the judgment discharged of record. The Appellate Term on July 13,1971 reversed the order and remanded the matter to this court for a hearing de novo, suggesting that the court’s considerations should include:
1. Whether petitioners were insolvent when respondent’s assignor entered the judgment involved herein;
2. Whether respondent’s assignor surrendered or invalidated in the bankruptcy proceeding its lien of the judgment on the real property;
3. Whether respondent’s assignor received its distributive share in the distribution of the bankrupt estate;
4. Whether the purchase of the judgment by respondent amounted to champerty;
5. Whether the trustee in bankruptcy brought any proceeding pursuant to section 150 of the Debtor and Creditor Law to attack the judgment lien ;
6. Whether respondent’s assignor was the owner of the judgment against petitioners when it assigned the judgment to respondent, as set forth in its assignment of the judgment to respondent; and
7. Whether the trustee’s deed to petitioners conveyed the premises to them subject to the lien involved in this proceeding.
THE ARGUMENTS
The applicants base their right to a cancellation of the judgment and the concomitant lien on four points of law:
1. The assignment of the judgment by the Bank to Mrs. Black-man was void as against public policy. The applicants argue that section 489 of the Judiciary Law prohibits champerty, which includes the purchase of a claim for the purpose of initiating a proceeding thereon; that the assignee’s issuance of the execution constituted the initiation of a proceeding; and that the assignment is therefore unenforceable. The applicants also maintain that Mrs. Blackman’s attempt to collect $3,590.83 on a judgment purchased for $310 is unjust enrichment and unconscionable.
*814 2. Section 150 of the Debtor and Creditor Law is unconstitutional because it is in contravention of the Federal Bankruptcy Act in that it seeks to revive a debt discharged in bankruptcy.
3. The assignee seeks to obtain a further dividend from the bankrupt’s estate, in derogation of the principle that all creditors should share in an equitable ratio, without preference.
4. The Bank surrendered its lien in the course of the bankruptcy proceedings, due to the facts that: (a) a creditor’s claim in bankruptcy which is secured by a lien is not allowable unless he surrenders the lien; (b) the Bank affirmatively surrendered the lien when it filed its proof of claim containing the statement that no security exists for the debt it is claiming; and (c) a creditor must surrender his preference in order to participate in a bankrupt’s estate; the Bank did so participate, and thus must have surrendered its preference, viz., its judgment lien. Finally, the applicants argue that the judgment lien was void all along, because the underlying judgment was void in that the applicants were insolvent at the time the judgment was entered.
The assignee in opposition to this application advances six arguments for the preservation of her lien:
1. A judgment lien against real property is not automatically extinguished by a discharge in bankruptcy, but requires some affirmative act such as this application. And then, under section 150 of the Debtor and Creditor Law, a qualified discharge can be granted, canceling the judgment as a record of personal indebtedness but preserving the lien against the land. The utility of a qualified discharge, it is argued, is that it protects the debtor’s after-acquired property from the reaches of the lien.
2. The trustee in bankruptcy took title to the Felders’ land subject to this lien, and could have had it removed for the benefit of the creditors, but failed to do so.
3. The lien remained after the adjudication of bankruptcy, and followed the land in the conveyance by the trustee back to the Felders.
4. The Bank never surrendered its lien in the bankruptcy proceedings, since its acceptance of some dividends was not tantamount to participation in a general distribution of the estate’s assets. The bankruptcy court would have explicitated this determination if it were the fact; for example, by giving notice to all lienors of the property that the proposed sale to the Felders would extinguish all encumbrances. To adopt such an interpretation would allow the Felders unjust enrichment, in that they escape the debt and retain the land unencumbered as well.
5. The argument, that section 150 of the Debtor and Creditor Law is unconstitutional, is untenable.
*815 6. Section 489 of the Judiciary Law is not applicable in the instant case, since (a) an assignment of a judgment is not a purchase of a claim with the intention of bringing suit thereon; and (b) the issuance of an execution is not the institution of an action or proceeding. Also, the assignee contends, even if the assignment is deemed void, such a determination would not be the basis for the relief requested in this application — discharge of the judgment. A void assignment would mean only that it cannot be enforced by the assignee, but would not abrogate the right of the assignor to foreclose on the lien.
FINDINGS OF FACT
We address ourselves now to the findings of fact requested by the Appellate Term. Such findings were made, it should be noted, in light of the principles that the burden is on the creditor to establish that the judgment is not one upon which a discharge in bankruptcy acts automatically, and the debtor has the burden to establish that the judgment was in fact listed and discharge-able in bankruptcy. (Long Is. Trust Co. v. Felder, 63 Misc 2d 413.) (In this case, referred to below, the plaintiff was another judgment creditor of these same parties, the Felders, in the same bankruptcy proceeding.)
1. The Felders were insolvent at the time the judgment was entered. That was a finding of this court at the original hearing, and the papers opposing this application do not contest it.
2. The Bank surrendered its judgment lien in the bankruptcy proceeding. Exhibit 3 in evidence is the proofs of claim submitted by the Bank against the Felders. In paragraph 6 thereof, the Bank states explicitly that it holds no security for the debt it claims, nor does anyone else have such a security, to the best of its knowledge. Moreover, there is no dispute that the Bank’s claim was allowed, even though the Bank’s assignee claims that the Bank did not participate in any distribution of the estate. And subdivision (g) of section 57 of the Bankruptcy Act (U. S. Code, tit. 11, § 92, subd. [g]) states that the claims of a creditor who has a lien void or voidable under the act will not be allowed unless the creditor surrenders the lien. Finally, we find that the Bank did participate in a distribution of the bankrupt’s estate, which is the next factual item.
3. Exhibit 4 in evidence consists of two orders for payment of dividends issued by the bankruptcy court. The dividends were “ declared on all unsecured claims, not entitled to priority, allowed against the estate of the above named bankrupt. ’ ’ The Bank was a named recipient of a dividend. Also, although the Bankruptcy Act does not define “ dividends ”, the word is usu *816 ally applied to payments made to general creditors. (2 Modern Bankruptcy Manual, § 1262.)
4. The purchase of the judgment by the Bank’s assignee did not amount to champerty. Counsel for both parties have made much of this issue, but the question is not deep. Section 489 of the Judiciary Law prohibits, among other things, the sale or assignment of “ any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon ’ ’. The statute is designed to prevent the practice of litigation by corporations. Transfers of judgments are specifically permitted by section 13-103 of the General Obligations Law, and supported by implication in Weinstein-Korn-Miller, New York Practice (vol. 5, par. 5014.03). The fact that the Bank’s assignee buys judgments in the regular course of business, as a collection agency, is inconsequential. (Rosenkrantz v. Berlin, 65 Misc 2d 320 and Rosenlcrantz v. Salvo Realty Corp., 65 Misc 2d 467.)
5. The trustee in bankruptcy did not bring any proceeding pursuant to section 150 of the Debtor and Creditor Law.
6. The Bank was the owner of the judgment in question when it assigned it to Mrs. Blackman.
7. The trustee’s deed to the Felders conveyed the premises to them subject to the lien in question. The deed itself is not in evidence, nor is there any indication whether the conveyance was before or after the discharge in bankruptcy. However, as we discuss below, the judgment lien survived the discharge anyway. And there is sufficient documentary evidence in the Felders’ offer to buy the property and in the bankruptcy court’s notice of meeting of creditors to consider the transfer to conclude that the sale was subject to the Bank’s judgment lien.
THE APPLICABLE LAW
The fact that the Felders were insolvent when the judgment was entered means that the judgment lien was voidable in bankruptcy (Bankruptcy Act, § 67, subd. [a], par. [1]; TI. S. Code, tit. 11, § 107, subd. [a], par [1]). However, the lien was not automatically void without some affirmative action by the trustee or anyone else, and hence it survived the discharge in bankruptcy. (Fischer v. Pauline Oil Co., 309 U. S. 294; and Long Is. Trust Co. v. Felder, 63 Misc 2d 413.)
The assignment by the Bank to Mrs. Blackman was valid and she is a proper party to oppose this application. (General Obligations Law, § 13-103; and cases cited thereunder.)
The crux of the matter is whether the Bank, by any of its actions, surrendered its lien in the bankruptcy proceedings. As mentioned above, we found on the facts that such a surrender was made. Judicial authority supports that finding. In Long Is. *817 Trust Co. v. Felder (supra) that bank was exactly in the same position throughout as the Bank in the case at bar. Long Island Trust held a judgment lien on property owned by the Felders; it filed proof of claim in bankruptcy court, which was allowed; and it received “ dividends ” from the bankrupts’ estates. The Nassau County District Court held (p. 415): “ The plaintiff exercised its option by filing its proof of claim, surrendering its lien and elected to participate as a general creditor. Subsequently, at a creditors ’ meeting the trustee 1 knocked down ’ the defendants’ residence to the highest bidder, the defendants herein, and issued them a deed. The sale appears to have been made for the benefit of the bankrupt’s estate and its creditors. The plaintiff received, and it is not disputed, a dividend in each bankrupt estate. Subdivision (e) of section 65 of the Bankruptcy Act (U. S. Code, tit. 11, § 105, subd. [e]) prohibits a creditor from collecting any greater amount from the debtor other than as prescribed in the bankruptcy proceeding. It cannot be heard to say, without submission of facts in support thereof, that the liens were not invalidated and declared null and void in accordance with section 67 of the Bankruptcy Act (U. S. Code, tit. 11, § 107). Even if there were a conflict between the Federal and State acts, the Federal act controls (IT. S. Const., art. VI). There was, in fact, a general distribution amongst the creditors (3 Collier, Bankruptcy [14th ed.], § 57.19). In juxtaposition the creditor herein filed a proof of claim surrendering lien. One who had received a preference had the option to surrender his preference and file his claim or stand on his preference and abandon his claim. He cannot do both ”.
The Nassau County Supreme Court reached the same conclusion on the same set of facts in Chao v. Kamages (Index No. 11933/69, Jan. 19,1970).
The Bank’s assignee relies on a section of Collier’s Bankruptcy Manual to show that the acceptance of dividends is not necessarily a waiver of a creditor’s lien. While that may be true, if the section referred to by the assignee were cited more fully, it would be seen that the authority of Collier’s work is very heavily on the Felders ’ side of the scale. 1 ‘ Surrender of a security will sometimes be inferred from certain acts apparently indicative of an intent to surrender or waive the security. Creditors desirous to retain their lien should, therefore, make an express reservation to this effect in connection with any act that might be construed as a waiver, such as, e.g., the acceptance of a receiver’s certificate, the yielding of possession where possession was necessary to create the lien, or an agreement extend *818 ing the debtor’s time for payment. Above all, creditors who wish to preserve their security should not prove their claim as unsecured. They do not lose their lien by filing no claim at all. But they ordinarily do lose it by filing their claim as unsecured. Unless there are clear indications to the contrary or, at least, indications negativing any implication of waiver, such creditors may be presumed to have waived their security.” (1 Collier, Bankruptcy Manual, par. 57.04.)
CONCLUSION
Mrs. Blackman’s judgment lien survived the Felders’ discharge in bankruptcy and is currently extant. Although the Bank by its conduct surrendered the lien in the bankruptcy proceedings, such a surrender does not act self-operatively, to extinguish the lien. However, under section 150 of the Debtor and Creditor Law, upon sufficient proof thereof, a court in which the judgment was docketed can issue an order discharging the judgment and the lien of record. That should be the result in the instant matter.
Justice and the underlying tenets of fairness upon which that concept is based dictate that that should be the result in this matter.
Submit order discharging the judgment and the lien of record.